OPINION
Appellant, Ronald N. Khoury, M.D., appeals a decision of the Trumbull County Court of Common Pleas granting summary judgment in favor of appellee, Trumbull Physician Hospital Organization. Appellant had filed a complaint against appellee after appellee failed to include him as a provider within its organization. Appellant's complaint included claims based upon: unjust enrichment; tortious interference with a contractual relationship; breach of implied covenant of good faith and fair dealing; and various due process of law claims. Appellant sought both damages and injunctive relief. The following facts are relevant to a determination of this appeal.
Appellant is a general surgeon who maintains a practice in Warren, Ohio. In July of 1997, Western Reserve Care System ("WRCS") affiliated with Trumbull Memorial Hospital. WRCS and Trumbull Memorial Hospital each created its own physician-hospital organization ("PHO") before 1997. WRCS and Western Reserve Physician Organization ("WRPO") formed a PHO named PrideCare Health System ("PrideCare") in July 1995. Appellant was not a member of WRPO but he was a contract provider on PrideCare's panel of providers prior to January 1998.
Trumbull Memorial Hospital and Trumbull Physician Organization ("TPO") formed a PHO named Trumbull Physician Hospital Organization, appellee herein, in July of 1996. Appellant was never a member of appellee's panel of providers and has not been included in appellee's provider directory.
PrideCare and appellee recently affiliated with each other by creating an organization named Premier Medical Alliance ("Premier"), which operates as a PHO. In connection with the affiliation, PrideCare and appellee agreed to use each other's panel of participating providers exclusively for professional services rendered in the service area of the other, i.e., PrideCare agreed to use appellee's participating providers for services in Warren, while appellee agreed to use PrideCare's participating providers for services in Youngstown. Effective January 1, 1998, PrideCare terminated appellant and other Trumbull County providers from its panel of contracted providers because it could meet its physician coverage needs through appellee's panel of participating providers.
In August of 1996, appellant submitted his application to appellee in an attempt to become one of its participating providers as a general surgeon. Each application submitted to appellee is considered by its eleven voting members, nine of whom are physicians, who make the credentialing decisions. As part of appellant's application, he executed and submitted a document that stated, in pertinent part:
 "I understand that this application does not guarantee my participation as a provider in [appellee] * * *.
"* * *
 "I further agree to release from liability [appellee] and its officers, employees, agents and representatives for their acts or omissions performed in good faith and without malice in connection with evaluating my credentials and application for Participating Provider status in [appellee]."
Appellee rejected appellant's application, stating that the length of his surgeries was excessive. Appellee offered to refund his application fee or place his application on hold, retain his fee, and reevaluate his situation in a period of three to six months. Appellant requested that his application be reconsidered in three to six months.
In January of 1998, after reviewing appellant's application a second time, appellant's application was once again rejected "for business reasons associated with the provision of cost effective healthcare." This led to the filing of the complaint in this case on June 4, 1998. On July 22, 1998, appellee filed a motion to dismiss or, in the alternative, for summary judgment. Both parties briefed the issues and, on September 13, 1999, the trial court granted summary judgment in favor of appellee.
Appellant timely filed a notice of appeal and has now set forth the following assignment of error:
 "The Trial Court incorrectly granted Defendant's Motion for Summary Judgment as to all five of Plaintiff's related causes of action."
 In his sole assignment of error, appellant contends that the trial court erred in granting summary judgment in favor of appellee. We disagree.
Civ.R. 56(C) provides, in relevant part:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
As this court has previously stated, in a summary judgment exercise, the movant bears the responsibility of establishing that there is the absence of a genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. State Automobile Ins. Cos. v.Manning (Aug. 8, 1997), Geauga App. No. 96-G-2000, unreported, at 3. If the movant fails to meet this burden, summary judgment must be denied.Id., citing Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the movant is successful, the burden shifts to the non-moving party to demonstrate that a jury question, in fact, exists. Id., citing State exrel. Mayes v. Holeman (1996), 76 Ohio St.3d 147, 148. If the non-moving party fails to demonstrate that a triable issue exists, summary judgment should be granted. Id. at 3-4, citing State ex rel. Leigh v. SERB
(1996), 76 Ohio St.3d 143, 146.
Within appellant's assignment of error, he addresses each of his original causes of action and argues why summary judgment was inappropriate as to that cause of action. The first cause of action addressed by appellant is tortious interference with a contractual relationship. Here, appellant claims that appellee's denial of his application to be a contract provider interfered with his physician/patient relationships. Since insurance would not cover treatment appellant gave to his patients who were members of that health insurance plan, those patients would seek treatment from other physicians.
It is well established that tortious interference with a contractual relationship is a recognized tort in Ohio. Kenty v. Transamerica PremiumIns. Co. (1995), 72 Ohio St.3d 415, syllabus. In Kenty, the Supreme Court of Ohio held that in order to recover for a claim of intentional interference with a contract, the plaintiff must prove:
 "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." Id. at 419.
In the case sub judice, appellant's tortious interference claim must fail because he cannot establish either the third or fourth elements of the test. Appellee's decision not to include appellant as a contract provider simply does not amount to the intentional procurement of a breach of contract between appellant and his patients. It is nothing more than a business decision not to do business with appellant. Appellee is a private organization that is free to deal with any suppliers that it chooses to in the best interest of the organization. The mere refusal to deal with a party cannot support a claim for tortious interference with contractual relations. Bill Call Ford, Inc. v. Ford Motor Co. (N.D.Ohio. 1993), 830 F. Supp. 1053, affirmed (C.A. 6, 1995), 48 F.3d 201; Restatement of the Law 2d, Torts (1979), Section 766, Comment b.
Additionally, appellee is justified in precluding certain physicians from being contract providers based upon economic reasons. The stated reason for denying appellant's application was that the length of his surgeries far exceeded the norm. Evidence before the trial court indicated that longer surgeries commonly resulted in higher risk. Thus, there was justification for appellee's decision.
Moreover, the present case is very similar to a case decided by the First District Court of Appeals, Sammarco v. Anthem Ins. Cos., Inc.
(1998), 131 Ohio App.3d 544.[1]
The only meaningful difference between Sammarco and the instant cause is that in Sammarco, the plaintiff doctors were already providers under the health care plan when they were eliminated as contract providers. Here, appellant was at the stage where he was just applying to be a contract provider. Thus, the doctors in Sammarco had a stronger case than appellant does herein. The Sammarco court specifically addressed many of the same arguments raised by appellant including tortious interference with contract. The court rejected the plaintiffs' tortious interference claim based upon their failure to establish the third and fourth elements of the Kenty test. This lends further support to our decision.
Based upon the foregoing analysis, the trial court properly granted summary judgment with respect to appellant's claim for tortious interference with a contract.
Next, appellant argues that the trial court erred in granting summary judgment in favor of appellee on his claim for violation of due process rights. It is well established, however, that an individual's rights under the United States and Ohio Constitutions, such as the right to due process, apply only to actions of the government. State ex rel. Howard v.Ferreri (1994), 70 Ohio St.3d 587, 591. Thus, all claims raised by appellant under this argument were properly rejected by the trial court since appellee is clearly not a governmental entity.
Appellant makes the argument that public policy concerns in Ohio dictate that an opposite result be reached in this case. Specifically, appellant submits that individuals should have the right to seek medical treatment from whomever they choose, and the constitution protects a physician's right to practice his profession. Appellant cites to a decision of the Supreme Court of New Hampshire for support, Harper v.Healthsource New Hampshire, Inc. (1996), 674 A.2d 962. The New Hampshire court held that the plaintiff doctor was entitled to have the trial court examine the issue of whether his termination by the health maintenance organization violated public policy. The court stated that "[t]he public has a substantial interest in the relationship between health maintenance organizations and their preferred provider physicians" and that "[t]his relationship is perhaps the most important factor in linking a particular physician with a particular patient." Id. at 966. The court concluded "that the public interest and fundamental fairness demand that a health maintenance organization's decision to terminate its relationship with a particular physician provider must comport with the covenant of good faith and fair dealing and may not be made for a reason that is contrary to public policy." Id.
While we agree with the sentiment expressed by the New Hampshire court, as an appellate court, we are generally not a policy court, but instead, are constrained to follow the law as it exists in Ohio. However, we have previously held that we do have some leeway in certain areas to consider public policy. In Zivich v. Mentor Soccer Club, Inc. (Apr. 18, 1997), Lake App. No. 95-L-184, unreported, for example we held that when a litigant asks that we strike down a provision in a contract as being against public policy, we are not strictly bound by precedent, or lack thereof, but have greater latitude to consider what is fair, equitable, and beneficial to the public. Id. at 20-21; see, also, Judge Ford's concurring opinion in that case for a thorough analysis of this issue. In the instant cause, however, we are not addressing a new contract but an old one that is arising in a new context. Under these circumstances, we are not compelled to look beyond the law that currently exists. We find no support in Ohio for appellant's position on this matter. In fact, R.C. 1753.09, which specifically addresses the situation at hand, provides, in part:
 "(F)(1) Nothing in this section prohibits a health insuring corporation from rejecting a provider's application for participation, or from terminating a participating provider's contract, if the health insuring corporation determines that the health care needs of its enrollees are being met and no need exists for the provider's or participating provider's services."
This statute is not applicable to the present case because it did not become effective until October 1, 1998, however, it does provide guidance on what the public policy is on this issue in Ohio.
The next issue raised by appellant is that summary judgment should not have been granted on his claim for unjust enrichment. Appellant argues that appellee wrongfully denied his application in order to seize his patients.
In order to recover on a claim of unjust enrichment, a plaintiff must prove: (1) that the plaintiff conferred a benefit on the defendant; (2) knowledge by the defendant of such benefit; and, (3) that the defendant retained the benefit under circumstances where it would be inequitable to do so without compensation. Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 183.
Applying this test to the present case, it is clear that appellant's claim must fail. He is unable to establish any of the three elements. Appellant simply has not conferred a benefit on appellee. The trial court properly granted summary judgment on this claim.
Finally, the last argument raised by appellant is that summary judgment was inappropriate on his claim for breach of the implied covenant of good faith and fair dealing. This argument is also without merit since this is a claim that depends on the existence of a contract and, clearly, there was no contract between appellant and appellee. Hence, appellant does not have a claim for breach of the implied covenant of good faith and fair dealing.
Based upon the foregoing analysis, the trial court did not err in granting summary judgment in favor of appellee. Appellant's sole assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
 ________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., CHRISTLEY, J., concur.
[1] A discretionary appeal to the Supreme Court of Ohio was dismissed as having been improvidently allowed in (1999), 87 Ohio St.3d 1227.